United States District Court
Southern District of Texas

**ENTERED**

June 27, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH EDOJAH JAMAHO, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-4175 |
| | § | |
| ONOME DEMA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is the Motion for Temporary Injunction filed by Plaintiffs Elizabeth Jamaho ("Jamaho"), Rex Minabowan ("Minabowan"), Patricia Akangbou ("Akangbou"), and Charles Aruviereh ("Aruviereh") on behalf of Urhobo Progress Union America ("UPUA" or "Association") (collectively, "Plaintiffs"). (Docs. No. 1, 22).[1] The Court granted a temporary restraining order on an emergency basis (Doc. No. 20) and heard argument and received evidence on the motion at an injunction hearing on April 29, 2022.

Also before the Court is the Motion to Dismiss filed by Defendants Onoma Dema ("Dema") and Silas Okiti ("Okiti") (collectively, "Defendants"). (Doc. No. 30). Plaintiffs responded in opposition (Doc. No. 37), and Defendants replied thereto. (Doc. No. 38). The Court heard argument on this motion at the injunction hearing. Following the hearing, Defendants supplemented their motion (Doc. No. 57), and Plaintiffs supplemented their response (Doc. No. 55).

---

[1] Plaintiffs moved for a temporary injunction as part of their Original Complaint (Doc. No. 1) and reasserted the motion in their First Amended Complaint (Doc. No. 22).

After careful review of the briefing, the evidence, and the applicable law, the Court grants in part and denies in part Plaintiffs' Motion for Temporary Injunction and denies Defendants' Motion to Dismiss.

## I.     Background

This is a derivative action concerning a nonprofit organization failing to follow its own governing rules. UPUA is a nonprofit organization representing Urhobo[2] individuals residing in North America. (Doc. No. 22 at ¶ 6). It is registered in California. (*Id.*). The Houston chapter of UPUA is the organization's largest chapter. (*Id.* at ¶ 15). Defendant Dema is the President of UPUA, and Defendant Okiti is the UPUA Director of Membership. (*Id.* at ¶¶ 7–8).

UPUA is governed by a constitution, originally enacted in 2004 and subsequently amended in 2006. (*Id.* at ¶ 18; Doc. No. 22, Ex. 1). The constitution outlines two requirements pertinent to the instant case. First, the constitution requires that the UPUA treasurer "[w]ith the President, sign all checks drawn on, and disbursements from the Association's account(s)." (Doc. No. 22, Ex. 1, at 14). Second, the constitution states that "[t]he term of office of the President shall be two years provided that no individual shall serve more than two (2) consecutive terms." (*Id.* at 11).

UPUA is governed by a Board of Trustees ("BOT") and is managed by an Executive Committee. (*See generally id.*). The Board of Trustees is comprised of the UPUA President and the presidents of the individual UPUA chapters. (*Id.* at 7). UPUA hosts an annual convention each September (*Id.* at 20). The annual convention addresses a number of business items, including a report on the "state of the association" by the President, a financial report given by the Financial Secretary, a presentation of the budget for the subsequent fiscal year, and the election of the President in an election year. (*Id.* at 21). Notably, if the President-Elect is unable to be sworn in at

---

[2] The Urhobo people are an ethnic group located in southern Nigeria.

the annual convention, the constitution requires that the Board of Trustees call a special meeting

to swear in the President-Elect at a later date. (*Id.* at 21–22).

### A. Allegations of Financial Impropriety

Plaintiffs allege that Defendant Dema violated her fiduciary duty to UPUA by operating

"the Association's account like her personal account." (Doc. No. 22 at ¶ 28). Specifically, Plaintiffs

allege that for both the 2018 and 2019 annual conventions, Dema awarded "the printing of the

brochure and tickets to her husband and by extension herself," and that this amounted to a conflict

of interest and a usurpation of the Association to make profit. (*Id.*). Plaintiffs further allege that

Dema exceeded the budgeted expense for printing for each convention. (*Id.*). The approved amount

for printing for each convention was $7,350. (*Id.* at ¶¶ 28–30). In 2018, Dema purportedly spent

$16,226 ($8,876 above the approved amount), and in 2019, Dema purportedly spent $12,594

($5,244 above the approved amount). (*Id.*).

Plaintiffs next contend that for the 2019 convention, Dema's hotel bill amounted to

$4,892.98 for a three night stay, in excess of the approved group rate of $135 per night. (*Id.* at ¶

33). Additionally, Dema allegedly charged UPUA over $9,000 for travel tickets for "convention

dignitaries" without proof of expenses, and similarly "paid herself $7,855" to attend the annual

Urhobo Day of Celebration in Nigeria despite only being approved to spend $5,750. (*Id.* at ¶¶ 35–

36). Among the other alleged financial improprieties alleged by Plaintiffs are: $210 in unapproved

spending to send drinks to the President after the 2018 convention, irreconcilable waste in the

collections of pledges from donors, and Dema's previous attempts to invest UPUA's fund in a

microfinance bank in Nigeria of which she is a director. (*Id.* at ¶¶ 38–39, 43–44).

According to Plaintiffs, Tosan Okotie ("Okotie"), a member of the Association, brought

news of Dema's alleged misapplication of UPUA funds to the attention of UPUA members. He

was later expelled from UPUA by Dema and the Chairman of the Board of Trustees, Emmanuel Ojameruaye ("Ojameruaye"), "in an apparent move to stifle dissent and intimidate members." (*Id.* at ¶ 40). Furthermore, Plaintiffs contend that Ojameruaye "turned blind eyes" to the allegations of Dema's financial impropriety. (*Id.* at ¶ 42). Nevertheless, Plaintiffs argue that an internal audit report supported, or at least did not contradict, Okotie's claims. Plaintiffs argue that on information and belief, until Okotie's allegations came to light, only one individual was signing UPUA checks, in violation of the UPUA constitution. (*Id.* at ¶¶ 26–27).

Ultimately, Plaintiffs allege that given the President's financial behavior and ability to control the UPUA budget, the approximately $250,000 in UPUA's bank account is in jeopardy of being improperly depleted. (*Id.* at ¶ 46).

B.   2019 Presidential Election

Plaintiffs also allege that Dema has violated the constitution by impermissibly holding her role as President outside her elected term. Per the Plaintiffs, when news of Dema's financial impropriety spread amongst the UPUA members, she recognized she would be unlikely to win reelection at the 2019 annual convention and, enlisting the help of Okiti, subsequently "began a plot to scuttle the presidential election." (*Id.* at ¶¶ 14–15). While the specific circumstances and bases remain unclear, Okiti purportedly convinced the electoral committee to cancel the election, and the Board of Trustees consequently "illegally extended [Dema's] tenure for two years in violation of the extant UPUA constitution." (*Id.* at ¶ 17). Plaintiffs contend that this impermissible cancellation of the election and extension of Dema's term "was designed to give [Dema] time to cover up allegations of financial impropriety and to eventually invest UPUA's fund in a Micro finance bank in Nigeria." (*Id.* at ¶ 18).

4

Apparently, Ojameruaye and Dema then attempted to amend the UPUA constitution in 2021 to allow Dema to continue as President. (*Id.* at ¶ 20). While Defendants contend that this amendment was apparently "ratified" on or about August 6, 2021, Plaintiffs allege (and provide evidence demonstrating) that the amendment failed because it was not voted on at a convention and because "the ratification did not meet the two-third majority threshold of those present at the [Board of Trustees] meeting in accordance with Article 12.6 of the UPUA constitution." (*Id.* at ¶¶ 21–22; Doc. No. 22, Ex. 1, at 24). As a result, Plaintiffs allege that Dema has been acting as the illegitimate president of UPUA since 2019.

## II.    Legal Standard

A preliminary injunction is an "extraordinary remedy" that should be granted only if the movant has "clearly carried the burden of persuasion" on all elements. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant, however, "need not prove his case." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) (citing *H & W Indus. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)). Before a court will grant a preliminary injunction, the movant must clearly show:

> (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

is in the public interest."). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

### III.   Jurisdiction

Following the injunction hearing, the Court asked the parties to show cause as to why this case should not be dismissed for lack of subject-matter jurisdiction. Specifically, the Court sought further clarification as to the amount in controversy.

Federal courts have original jurisdiction over civil actions when the matter is between citizens of different states and when the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a)(1). In this case, there is no dispute concerning the existence diversity of citizenship, so the pertinent analysis is confined to the amount in controversy. The Fifth Circuit has made clear that defendants bear the burden of proving that the amount in controversy exceeds $75,000, by a preponderance of the evidence. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882–83 (5th Cir. 2000). "The defendant may prove that amount either by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount." *Id.*

The Court finds that it has diversity jurisdiction over this case. First, it notes that there is no dispute that diversity of citizenship exists between the parties. The question on which the Court was concerned and over which the parties have joined battle is whether the amount in controversy "exceeds $75,000." *See* 28 U.S.C. § 1332(a). In their briefing, Defendants argue Plaintiffs have failed to satisfy their burden of establishing the amount in controversy by a preponderance of the evidence. *See Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 980, 910 (5th Cir. 2002). Specifically, Defendants argue that Plaintiffs have pleaded "various amounts such as $4,000-$5,000 excess in

printing, a hotel bill of $4,892.98, and a $2,000 URHOBO day celebration," which collectively fall well short of the threshold required to satisfy diversity jurisdiction. (Doc. No. 59 at 2).

In response, Plaintiffs argue that they have satisfied the amount in controversy requirement because "the lawsuit was brought principally to protect the assets of UPUA, which is over $190,000." (Doc. No. 60 at ¶ 5). Additionally, Plaintiffs argue that the monetary damages in this case, derived from "waste of corporation's assets, self-dealing, usurpation of corporate opportunities, conflict of interest and breach of fiduciary duty" are approximately $83,000. (*Id.* at ¶ 14).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). "To put it another way, the amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983). "The amount in controversy is measured from the perspective of the plaintiff." *Ballew v. America's Servicing Co.*, No. 4:11-cv-030, 2011 WL 880135, at *3 (N.D. Tex. Mar. 14, 2011).

The Court finds that Plaintiffs have satisfied the amount in controversy requirement. In their application for temporary injunction, Plaintiffs ask this Court "to enjoin defendants from selling property, hiding the corporation's assets, opening other bank accounts in the corporation's name, depleting corporate fund[s], [and] usurping corporate opportunities for personal gains," among other things. (Doc. No. 22 at ¶ 76). From the Plaintiffs' perspective, the object of their amended complaint is primarily the property and assets of UPUA. That amount exceeds $75,000; therefore, the Court has jurisdiction to hear this matter.

## IV.     Choice of Law

Prior to analyzing the merits of the temporary injunction, the Court must determine whether Texas law or California law applies in this case. Plaintiffs argue that they have standing to bring this derivative suit under both California and Texas law. Which state's law applies is a critical question because Texas law would clearly not allow this lawsuit, but California law may.

"A federal court considering a diversity case that implicates choice of laws must determine which state's law applies by following the choice of law rules of the forum state." *Marchesani v. Pellerin-Milnor Corp.*, 369 F.3d 481, 485 (5th Cir. 2001). Accordingly, Texas's choice-of-law rules control the determination of whether Texas or California law applies to Plaintiffs' claims. "Choice-of-law issues are determined on an issue-by-issue basis." *Pilepro, LLC v. Chang*, 152 F. Supp. 3d 659, 674 (W.D. Tex. 2016). "In Texas, 'the law of the incorporating state governs a corporation's internal affairs.'" *Id.* (quoting *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 354 (5th Cir. 1989)); *see also Hollis v. Hill*, 232 F.3d 460, 464–65 (5th Cir. 2000) ("Texas, like most other states, follows the 'internal affairs doctrine.' That is, the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and matters relating to its shares, are governed by the laws of the jurisdiction of incorporation." (cleaned up))

UPUA is incorporated under the laws of California. Consequently, under Texas's choice-of-law rules, California law determines whether shareholders can bring a derivative suit on behalf of the nonprofit. Section 7710 of the California Corporations Code allows for shareholders or members of a nonprofit corporation to bring a derivative suit on behalf of the corporation. Specifically, the statute provides, in pertinent part:

> (b) No action may be instituted or maintained in the right of any corporation by any member of such corporation unless both of the following conditions exist:

8

(1) The plaintiff alleges in the complaint that plaintiff was a member at the time of the transaction or any part thereof of which plaintiff complains, or that plaintiff's membership thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of transaction or any part thereof complained of; and

(2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

CAL. CORP. CODE § 7710. Defendants contend that Plaintiffs do not have standing to bring a derivative suit because they have failed to satisfy the second requirement of § 7710, which requires that in the complaint, Plaintiffs either specify their efforts to make their demands clear to the board, or alternatively, identify the reasons for not doing so. (Doc. No. 57 at 3).

In the First Amended Complaint, Plaintiffs explain:

Prior to filing this lawsuit, plaintiffs gave the BOT notice of defendants' unlawful actions and injury to UPUA. The BOT failed to act. Elizabeth Jamaho, a member of the BOT[,] strenuously impressed upon the BOT the need to act to protect UPUA from further injury to no avail. She considers it futile to give the BOT any other additional notice because [Dema] has total control of the BOT chairman and members of the BOT. The BOT is incapable of acting in the interest of UPUA.

(Doc. No. 22 at ¶ 93). Additionally, in their supplemental briefing, Plaintiffs note that they sent a letter of demand to the BOT raising their concerns regarding the actions of Defendants. *See* (Doc. No. 55, Ex. 3). California courts interpreting a similar provision of the California Corporations Code have stated that "the shareholder asserting a derivative claim must make a threshold showing that he or she made a presuit demand on the board to take the desired action." *Bader v. Anderson*, 179 Cal. App. 4th 775, 782 (2009). Though the Plaintiffs might have been better served by attaching this presuit letter to their First Amended Complaint, in the interest of judicial economy,

the Court finds that this written presuit demand from the Plaintiffs sent to the BOT in conjunction with the allusion to the demand in the First Amended complaint satisfies the second requirement of derivative standing under California law. Therefore, Plaintiffs have standing to bring this derivative action.

## V.    Injunction

The next issue is whether this Court should issue an injunction and, if it does, the breadth of such injunction. The elements of an injunction in this Circuit are well established. The movant must prove (1) he is likely to succeed in the lawsuit, (2) irreparable injury, (3) the threatened injury outweighs any damage the injunction might cause the defendant, and (4) the injunction will not disserve the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).

A. Likelihood of Success

"To satisfy the first element of likelihood of success on the merits, [a plaintiff's] evidence in the preliminary injunction proceeding 'is not required to prove [his] entitlement to summary judgment.'" *Janey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011). Plaintiffs ask this Court to enjoin Defendants "from selling property, hiding the corporation's assets, opening other bank accounts in the corporation's name, depleting corporate funds, usurping corporate opportunities for personal gains, investing the corporation's funds in [microfinance] banks and other risky ventures in Nigeria, and using corporate funds for personal use." (Doc. No. 22 at ¶ 76). Additionally, Plaintiffs request that the Court enjoin Dema from "acting and presenting herself as the president of UPUA," prevent Defendants from using the UPUA constitution to "advance their illegal agenda," and to prevent Defendants and BOT "from holding any meetings, convention, or election for the office of the president" until this case is resolved. (*Id.* at ¶¶ 78–81).

At the injunction hearing, Plaintiffs argued that the UPUA constitution says that "no president shall be in office more than four years, two consecutive terms" and that Dema is now on her fifth term. Jamaho testified that Dema is currently in her fifth year as President, in violation of the tenure limits of the constitution.

Defendants presented testimony acknowledging that Dema is currently in her fifth year as President, but they argue this is a result of two complications: first, a "botched election" in 2019 allegedly caused by members of the Houston chapter who could not come to an agreement on a candidate,[3] and second, COVID-19, which delayed the 2020 convention, and consequently, the presidential election. As a result of each complication, Defendants argue that Dema's presidency was extended twice in order to avoid a "leadership vacuum."

Plaintiffs also argued that "the constitution requires two signatories to the checking account" but that recently, only one person has been signing the organization's checks. Okotie further testified that he learned from his soon-to-be-ex-wife, the treasurer of UPUA, that "from inception until the time that I was expelled for blowing the whistle, only one signature was signing the checks." Defendants have failed to adduce evidence to the contrary.

The Plaintiffs also allege a variety of alleged abuses by Dema and/or the BOT that they characterize as an abuse of power, wasteful, and which on certain occasions amounted to be self-dealing and a usurpation of corporate assets. The specific level of evidence brought forth to prove these claims is not sufficient to lead this Court to the conclusion that there is a likelihood of success. Therefore, the Court denies injunctive relief based upon these contentions.[4]

---

[3] The exact details surrounding this "botched election" remain unclear.

[4] Moreover, there is an established body of law that a party seeking injunctive relief cannot establish irreparable injury due to acts or omissions that can be remedied by a money judgment. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). These claims fall into that category and thus this Court would not be able to grant an injunction as to these claims even if the level of proof provided had been sufficient.

The Court finds that Plaintiffs have established a likelihood of success with respect to their claims that Defendants violated the terms of the UPUA constitution, namely, that Dema violated the prescribed term limits for the office of President and that Defendants violated the two-signature requirement for checks as they relate to UPUA's funds. On these issues, the Court finds this factor weighs in favor of granting injunctive relief. Therefore, the Court moves to the next element with respect to each of these constitutional requirements.

At the injunction hearing, Okiti specifically testified that the BOT had voted not to invest in any microfinance bank. As such, this issue appears to be moot and need not be addressed.

C. Irreparable Injury

With respect to the enforcement of the term limits and signature requirements, the Court finds that Plaintiffs will suffer irreparable injury if an injunction is not issued. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Broyles v. Texas*, 618 F. Supp. 2d 661, 681 (S.D. Tex. 2009). On each issue, the Court finds that this factor weighs in favor of injunctive relief. When an organization is governed by a constitution or set of bylaws, the leadership's failure to abide by such rules threatens the legitimacy of the organization and threatens the organization and its members alike. Certainly, if the term limitations set forth in the UPUA constitution are free to be ignored, the organization and its members will be deprived of the ability to have a voice in UPUA's leadership.

In this instance it is clear that the current President has served since 2017. The UPUA constitution specifically states that the President shall serve no more than two consecutive terms with an overall limit of four consecutive years. The evidence establishes that Dema has served five

12

years and has been elected for one term and appointed for other terms. This clearly contravenes the UPUA constitution.

Similarly, if the signature requirement is left unenforced, organizational funds run the risk of depletion or misuse. The evidence clearly establishes that for years this requirement has not been observed. This violation of the constitution may have very well led to the financial abuses of which the Plaintiffs complain. Regardless of its effect on the stewardship of UPUA funds, the dictates of the constitution must be observed.

Thus, absent injunctive relief, Plaintiffs face irreparable injury.

D. Balance of Equities

The Court finds that the balance of equities weighs heavily in favor of Plaintiffs' request for injunctive relief. An injunction requiring Defendants to adhere to the rules set forth in the UPUA constitution, including but not limited to the presidential term limits and signature requirement for checks, cannot be said to cause any undue harm or inconvenience. Following the terms agreed upon in the UPUA constitution should be the bare minimum expectation of a nonprofit's leadership. As a result, Plaintiffs' interest in ensuring that UPUA's constitutional requirements are followed outweighs any conceivable interest on the part of Defendants to do otherwise.

E. Public Interest

"[T]he public interest factor requires the court to consider what public interests might be injured and what public interests might be served by granting or denying a preliminary injunction." *Texas v. United States*, 524 F. Supp. 3d 598, 663 (S.D. Tex. 2021) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997–98 (8th Cir. 2011)). The Court finds that injunctive relief in the form of requiring Defendants to follow the terms of the UPUA constitution yields no harm to

the public interest. In fact, such relief serves the public interest in ensuring the orderly operation of nonprofit organizations. Consequently, this factor weighs in favor of Plaintiffs' requested relief.

Therefore, this Court enjoins Defendants from violating the terms of the UPUA constitution, including, but not limited to, the provisions concerning the term limits of the UPUA president and the two-signature requirement on all checks disbursing UPUA funds.

As stated above, the claims of financial improprieties, the Court is not convinced that Plaintiffs have satisfied their burden of proving likelihood of success. Moreover, it believes that this injunction requiring Defendants to abide by the two-signature requirement for checks might alleviate the Plaintiffs' remaining concerns relating to financial conduct, and the Court therefore denies without prejudice the remaining claims in the motion.[5] Thus, Plaintiffs' Motion for Temporary Injunction is granted in part and denied in part.

## VI.    Defendants' Motion to Dismiss

This Court also has before it the motion to dismiss filed by Defendants. (Doc. No. 30). Defendants argued that Plaintiffs lacked standing to make a derivative claim. In light of the Court's earlier analysis concerning this point, Defendants' Motion to Dismiss is denied.

## VII.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Temporary Injunction is **GRANTED IN PART** and **DENIED IN PART**. (Doc. No. 22). Defendants' Motion to Dismiss is **DENIED**. (Doc. No. 30).

Signed at Houston, Texas, this 27th day of June, 2022.

Andrew S. Hanen
United States District Judge

---

[5] The requested relief is denied without prejudice so that in the event that Plaintiffs become aware of untoward financial activity on the part of Defendants, they are free to raise those issues again if they so choose.