IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELIZABETH EDOJAH JAMAHO, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| VS. | § CIVIL ACTION NO. 4:21-CV-4175 |
| | § |
| ONOME DEMA, *et al.*, | § |
| | § |
| Defendants. | § |

### ORDER

The above captioned case came before the Court for trial. Plaintiffs Elizabeth Edojah Jamaho ("Jamaho"), Rex Minabowan ("Minabowan"), Patricia Akangbou ("Akangbou"), and Charles Aruviereh ("Aruviereh") (collectively the "Plaintiffs") brought a derivative lawsuit on behalf of Urhobo Progress Union American ("UPUA" or the "Organization"). The Plaintiffs asserted various causes of action against Defendants Silias Okiti ("Okiti"), UPUA's previous director of membership, and Onome Dema ("Dema"), UPUA's former president. On May 15, 2023, the parties appeared and announced ready for trial. No jury was requested. Consequently, the trial was to the Court. Except when otherwise noted, the following factual statements are findings of fact, and the legal conclusions are conclusions of law.

### I. Background

At trial, the evidence established that UPUA is an organization formed to promote the culture of the delta state of Nigeria. The Organization adopted a "Constitution." According to its Constitution, UPUA is governed by a Board of Trustees ("BOT" or the "Board") and an Executive Committee, which is presided over by an elected President. Every year during Labor Day weekend, the Organization holds a National Convention. The president is elected at the National Convention. Under the Constitution in effect at the inception of this suit, the elected President is to serve a two-

1

year term and is not permitted to serve more than two consecutive two-year terms, or more than four consecutive years.

UPUA members first elected Dema as president in September of 2017, and she began her first term on January 1, 2018. Her term would have expired at the end of December 2019. In 2019, another National Convention was held. At that Convention, the Organization attempted to hold its presidential vote. That meeting, however, became combative, and the hotel hosting the Convention terminated the event and asked the UPUA members to leave the premises. Consequently, the election was not completed. The morning after the failed vote, the UPUA Board met and decided to keep the then current president—Dema—in place for an additional period of one-year, or until a new election could occur, whichever came first. At the time, the Board anticipated that the next election would be in the fall of 2020. No one anticipated a worldwide pandemic. Due to the COVID-19 pandemic, UPUA did not hold an election in 2020 and the Board extended Dema's term for one more year. The Organization finally held another election in September 2021. In 2021, UPUA's BOT debated whether to allow Dema to run again. Some members believed that Dema had completed her allowed term since she had presided for two years due to her election and two more years due to the extensions described above. Other members took the position that Dema only "ran" in the 2017 election, and that her two one-year extensions did not count towards her ability to run for a second term. Ultimately, a compromise was reached: Dema was allowed to run for one additional presidential term, not to exceed one year. She ran and won and her term expired last year. She is no longer the president.

Plaintiffs filed this lawsuit in 2021 against Okiti, UPUA's previous director of membership, and Dema, UPUA's former president. Plaintiffs asserted claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, breach of contract, gross

mismanagement, waste of corporate assets, breach of honest services, self-dealing, and for a declaratory judgment. The Court will discuss its findings of fact and conclusions of law for each cause of action. Finally, the Court will address the attorney's fees issue.

## II. Discussion of Causes of Action

### A. Breach of Fiduciary Duties

As mentioned, Plaintiff asserted claims for breach of fiduciary duties, gross mismanagement, waste of corporate assets, and breach of honest services against both Defendants. Additionally, Plaintiffs brought self-dealing cause of action against Dema. Since the allegations and the evidence concerning these five claims overlap, the Court will address the causes of action together.

The Court will start by discussing the claims against Okiti. During trial, the Plaintiffs presented no credible evidence showing Okiti breached any fiduciary duty. Additionally, there was no evidence that he grossly mismanaged funds, wasted corporate assets, or breached any duty of honest services. Therefore, the Court concludes there is insufficient credible evidence to support any of the above-mentioned claims against Okiti. Thus, the Court finds for Okiti on all causes of action.

The Court will, however, consider the evidence presented as it relates to Dema. At trial, Plaintiffs' main contentions against Dema were that she (1) did not require two individuals to sign UPUA checks, (2) used corporate assets for personal pursuits, and (3) unfairly awarded business opportunities to her family. The Court will discuss the evidence relating to each allegation.

1. Checks

Under the then current UPUA Constitution, the treasurer "with the president" shall "sign all checks drawn on and disbursements from the Association's account(s)." (Trial Exhibit 1).[1] In other words, the UPUA Constitution requires two signatures on each check—the treasurer's and the President's. At trial, Plaintiff introduced UPUA checks from 2018. (Trial Exhibit 3). It is uncontested that the checks did not contain two signatures. The only signature on the checks was that of the treasurer. Therefore, two conclusions are possible. Dema did not comply with the Constitutional provision that required her to sign the checks, or the Treasurer did not get the check to Dema before she paid the invoices.

It seems clear that the Organization has rarely, if ever, complied with this requirement. That said, the Plaintiffs did not introduce evidence of any damages resulting from Dema's failure to sign the checks. In fact, had she signed the checks as required under the UPUA Constitution, the result would be the same. Thus, while the Court concludes that it was improper under the 2006 Constitution to not have the required two signatories on each check, Plaintiffs did not succeed in proving any damages resulting from this failure.[2] Moreover, the uncontroverted testimony at trial was that the Constitution was amended in 2022. No party offered the 2022 Constitution in evidence, so the Court does not know if this requirement still exists or not. As such, it cannot give any non-monetary relief based on this claim.

---

[1] While the evidence presented earlier to the Court concerning the 2021 attempt to amend the Constitution demonstrated that the amendments did not receive the required majority, the undisputed testimony at trial was that it was successfully amended in 2022. The 2022 amended version was not introduced into evidence. Therefore, this Court cannot address the current status of the Constitution and cannot and will not consider any extraordinary or declaratory relief based upon the current Constitution because that document was not put into evidence. The Constitution the Court refers to in the discussion of the individual causes of action is the 2006 Constitution.

[2] While not the province of this Court, it seems quite ungainly to require two signatures on all checks, regardless of the amount, in a nationwide organization where the President and the Treasurer might not reside within thousands of miles of each other.

4

2. <u>Corporate Assets for Personal Pursuits</u>

Plaintiffs also argued that Dema improperly used corporate assets to support personal pursuits. These alleged "personal pursuits" included Dema taking "leftover" drinks from the National Convention (or having those drinks shipped to her residence) and using the UPUA's money for extra hotel rooms at the National Convention.

Concerning the leftover drinks, Plaintiffs alleged that Dema took leftover drinks from the National Convention for her personal consumption. The evidence on this subject was scant, at best. Clearly there was no reason to leave the drinks at the convention location. Further, the Constitution is silent as to the Organization's options when there are leftover materials or refreshments from the Convention. Here, Plaintiffs did not introduce evidence of what became of those beverages. Thus, the Court finds that even if she did take the "leftover" drinks home with her, this conduct did not constitute breach of fiduciary duties, gross mismanagement, waste of corporate assets, or breach of honest services.

The bulk of Plaintiffs' evidence having to do with the hotel costs was simply that UPUA paid for Dema's rooms. Dema's rooms however were "used for storage and entertainment of dignitaries." After the Convention, the UPUA reviewed the organization's audit report, which covered the hotel bill in question. The report made a recommendation that in the future transactions costing over $500 need to be approved by the Board of Trustees. The Board did not further question the hotel bill nor did it find any wrongdoing. Furthermore, there is no basis in law for this court to find the conduct wrongful. An organization has a right to manage its funds as it sees fit as long as they are spent in a legal manner. Therefore, the law does not second-guess the financial decisions of a private organization.

### 3. Awarding Business Opportunities to Family

Lastly, Plaintiffs argued at trial that Dema unfairly awarded business opportunities to her family. These allegations mainly concern transactions between UPUA and Dema's husband for the printing of convention brochures. Plaintiffs also contended that Dema acted improperly when she tried to invest UPUA's funds in the Micro Finance Bank, a bank in Nigeria. Dema was one of the directors of the Micro Finance Bank.

Each year, the Organization, having no in-house printing capability, hires a third party to print UPUA brochures for the National Convention. It attempts to solicit bids from various companies and then selects the company to print the brochures based on the bids.

On at least one occasion, if not two, while Dema was president, Dema's husband's company was selected to print the brochures. The Organization made a business decision. While the evidence at trial demonstrated that the actual sums paid to Dema's husband was significantly higher than the UPUA's original budget estimated for the brochures, that historically has not been abnormal for the Organization. For example, in 2017 (before Dema became president), the actual costs of the brochures was higher than the budgeted amount. Further, Plaintiffs presented no evidence that the money paid to Dema's husband was not fair compensation for the work he performed. Instead, the evidence tends to infer that the expenditures during this time period were approved by the Board; in other words, the expenditures were not proved to be unauthorized. Therefore, the Court finds for Defendants as to this issue.

Lastly, as to the Micro Finance Bank allegations, the evidence at trial showed that the Organization did not invest any funds with the bank. In fact, the evidence at the hearing on the temporary injunction indicated that the idea of investing in the Micro Finance Investment Bank had been rejected sometime before the hearing. The evidence at trial was similar. The fact that this

idea might have been part of an agenda pushed by Dema as president does not give rise to a cause of action. The proposed investment never took place and no damage resulted. If every bad idea by an association's officer that was ultimately rejected after thoughtful reflection gave rise to a cause of action, the judiciary would be flooded with lawsuits. The Court finds for the Defendants on this issue.

## B. Aiding and Abetting Breach of Fiduciary Duties

Plaintiffs next asserted a claim for aiding and abetting in breach of fiduciary duties against Okiti. There was no sufficient credible evidence to support these claims against Okiti. The Court, therefore, finds for Okiti on this cause of action.

## C. Breach of Contract

In their Complaint, Plaintiffs contended that Defendants "entered a contract with plaintiff[s] when they were sworn in as officers of the Association." (Doc. No. 22 at ₱ 59). Plaintiffs argued at trial that Defendants breached the "contract" by (1) improperly paying for flight tickets for Nigerian dignitaries and (2) establishing various chapters within a 100-mile radius of existing chapters.[3]

First and foremost, Plaintiff failed to present any evidence that there was a valid contract between the Defendants and Plaintiffs or between Defendants and the Organization. While some of Dema's actions may have been arguably improper under the UPUA Constitution, as previously discussed, the Constitution is not a contract. The Plaintiffs presented no evidence tending to show the existence of a valid contract between Dema and/or Okiti and Plaintiffs or Dema and/Okiti and the Organization. Therefore, there is insufficient evidence to support a breach of contract claim.

---

[3] Plaintiffs did not succeed in proving any damages having to do with maintaining two chapters within 100-miles of one another. Additionally, considering the uncontroverted evidence showed a new Constitution was ratified in 2022, the Court cannot ascertain if this type of conduct is prohibited by the new Constitution.

Even if there was a valid contract, a Plaintiff "cannot assert a claim for breach of contract against one who is not a party to the contract." *Tri-Continent Internat. Corp. v. Paris Sav. & Loan Assn.*, 12 Cal. App. 4th 1354, 16 Cal. Rptr. 2d 508 (1993). Dema and Okiti, as individuals, were not parties to the UPUA Constitution. Thus, Plaintiffs failed to meet their burden to establish a successful breach of contract claim.

### D. Declaratory Judgment

Plaintiffs also asked the Court to declare the UPUA Constitution as amended in 2006 the extant constitution and to declare the 2021 UPUA amended constitutional unconstitutional. The testimony at trial indicates that the 2021 attempted amendments were not compliant with the requirements necessary to ratify an amended Constitution. However, the uncontroverted evidence at trial was that in 20222 the Constitution was validly amended. At trial, a witness explained how the 2021 Amendment might have been improper, but he stated,

> later on that same year we (the Board) found out that: You know what? How about if we repeat the entire process? So … in 2022, September, we decided to do a second ratification given the assumption that the 2021 ratification was wrong based on the -- based on counting people present rather than counting people who voted, and that enabled to certify 2022. It was now 15 members said, yes, and zero members said, no.

Therefore, this Court finds this issue to be moot.

### III. ATTORNEY'S FEES

The parties agree that this case is controlled by California law. In California, attorney's fees may not be awarded absent statutory authorization or contractual agreement. Code Civ. Proc., § 1021; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4, 71 Cal.Rptr.2d 830, 951 P.2d 399. "An exception to the general rule is found, however, in the so-called common-fund doctrine, which is applicable in equity cases and recognized as such in equity cases and recognized as such in California." *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 320 72 Cal. Rptr. 146, 150 (Ct.

8

App. 1968). When a plaintiff's action successfully results in a common fund, to which a number of persons are entitled, the plaintiff is allowed to recover attorney's fees from the fund. *Id.* Here, Plaintiffs are not entitled to attorney's fees under the common fund doctrine because no such fund exists.

Nevertheless, there is a second way to recover attorney fees in a derivative lawsuit—the substantial benefit rule. The "substantial benefit" rule is a variant of the common-fund doctrine and permits attorney's fees in the absence of a common fund. *Id.* at 323. According to the substantial benefit doctrine, "the successful plaintiff in a stockholder's derivative action may be awarded attorneys' fees ***against the corporation*** if the latter received 'substantial benefits' from the litigation, although the benefits were not 'pecuniary' and the action had not produced a fund from which they might be paid." *Id*. at 320 (emphasis added).

Plaintiffs claim they are entitled to fees under this exception. The Court finds, however, that Plaintiffs are not entitled to attorney's fees under the substantial benefit doctrine for two reasons. First, the substantial benefit rule applies ***against the corporation***. The UPUA is not a party to this action, and thus, the Court cannot order relief against it. Further, even if the Organization was a party, the benefit conferred here, if any, was not substantial. Therefore, Plaintiffs are not entitled to an award for attorney's fees.

Defendants also seek attorney fees, although they do not cite any legal reason that explains why they are entitled to such a reward. As for Defendants' attorney's fees, California Corporate Code Section 800 is instructive. Section 800 provides a statutory basis for a defendant's attorney's fees in a shareholder derivative lawsuit. *See Brusso v. Running Springs Country Club, Inc.* (1991) 228 Cal.App.3d 92, 101, 278 Cal.Rptr. 758; Cal. Corp. Code § 800. While not a classic shareholder's derivative suit, the Court finds that this is the most analogous legal situation. Under

9

Section 800, a plaintiff in a derivative lawsuit must furnish a bond securing payment of defendant's attorney's fees if the defendant establishes "a probability" based on affidavits or oral testimony (1) "[t]hat there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders[,] [or] (2) [t]hat the [defendant] moving party, if other than the corporation, did not participate in the transaction complained of in any capacity." Cal. Corp. Code § 800, subds. (c)(2), (d). "If the defendant does not satisfy one of the section 800 grounds for a bond and accordingly no bond or other security is posted, the defendant will not be entitled to section 800 attorney fees even if he or she prevails at the end of the litigation." *Donner Mgmt. Co. v. Schaffer*, 142 Cal. App. 4th 1296, 1304, 48 Cal. Rptr. 3d 534, 537 (2006).

Defendants did not request a bond; no bond was posted. Therefore, Defendants are not entitled to attorney's fees.

## IV. CONCLUSION

The Court finds that Plaintiffs take nothing as to Defendants. It finds that Plaintiffs are not entitled to further injustice or declaratory relief as that could only entail the 2006 Constitution that the uncontroverted testimony indicates was replaced in 2022. That being the case, these claims as are any claims concerning Micro Finance Bank are now moot. Each side shall bear their own attorney's fees and costs.

Signed at Houston, Texas, this 1st day of June, 2023.

Andrew S. Hanen
United States District Judge

10